# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Patricia Mae Kerr Karasov, | Case No. 14-cv-1503 (SRN/BRT) |
| Plaintiff, | |
| v. | **AMENDED MEMORANDUM OPINION AND ORDER** |
| Caplan Law Firm, P.A.; City of Bloomington; City of Brooklyn Center; City of Brooklyn Park; City of Burnsville; City of Dayton; Earl Street Auto Sales; City of Eden Prairie; City of Edina; Freeborn County; City of Golden Valley; Hennepin County; City of Hopkins; Lake Area Police Department; City of Maple Grove; Metropolitan Council; Mille Lacs County; City of Minneapolis; City of Monticello; City of Plymouth, City of Prior Lake; Ramsey County; Rice County; City of Richfield; City of Roseville; City of St. Louis Park; City of St. Paul; Stearns County; Steele County; Washington County; City of Wayzata; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1-300) acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30) acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; | |

| | |
|---|---|
| and Entity Does (1-50) including cities, counties, municipalities, and other entities sited in Minnesota,<br><br><center>Defendants.</center> | |

Lorenz F. Fett, Jr., Sonia L. Miller-Van Oort, and Jonathan A. Strauss, Sapientia Law Group PLLC, 12 South 6th Street, Suite 1242, Minneapolis, MN 55402, for Plaintiff.

Adam R. Strauss and William R. Skolnick, Skolnick & Schiff, P.A., 527 Marquette Avenue South, Suite 2100, Minneapolis, MN 55402, for Defendant Caplan Law Firm, P.A.

Jon K. Iverson, Stephanie A. Angolkar, and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Ave S., Bloomington, MN 55438, for Defendants City of Bloomington, City of Brooklyn Center, City of Brooklyn Park, City of Burnsville, City of Dayton, City of Eden Prairie, City of Golden Valley, City of Hopkins, Lakes Area Police Department, City of Maple Grove, City of Monticello, City of Plymouth, City of Prior Lake, City of Richfield, City of Roseville, City of St. Louis Park, and City of Wayzata.

Mark P. Hodkinson, Bassford Remele, PA, 33 South 6th Street, Suite 3800, Minneapolis, MN 55402, for Defendant City of Edina.

Margaret A. Skelton, Timothy A. Sullivan, and Erin E. Benson, Ratwik Roszak & Maloney, 730 2nd Ave South, Suite 300, Minneapolis, MN 55402, for Defendants Freeborn County, Mille Lacs County, Rice County, Stearns County, Steele County, and Washington County .

Toni A. Beitz, Beth A. Stack, and Daniel D. Kaczor, Hennepin County Attorney's Office, 300 South 6th Street, Suite A-2000 and C-2000, Minneapolis, MN 55487, for Defendant Hennepin County.

Daniel L. Abelson, Metropolitan Council, 390 Robert Street North, St. Paul, MN 55101, for Defendant Metropolitan Council.

Tracey N. Fussy, Minneapolis City Attorney's Office, 350 South 5th Street, Room 210, Minneapolis, MN 55415, for Defendant City of Minneapolis.

C. David Dietz, Kinberly R. Parker, and Robert B. Roche, Ramsey County Attorney's Office, 121 Seventh Place E, Suite 4500, St. Paul, MN 55101, for Defendant Ramsey County.

Adam M. Niblick, Saint Paul City Attorney's Office, 750 City Hall & Courthouse, 15 West Kellogg Blvd, St. Paul, MN 55102, for Defendant City of St. Paul.

Oliver J. Larson, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101-2134, for Defendants Michael Campion and Ramona Dohman.

SUSAN RICHARD NELSON, United States District Judge

## I.     INTRODUCTION

This matter is before the Court on the following motions: (1) Defendant Hennepin County's Motion to Dismiss and/or to Sever [Doc. No. 27]; (2) Defendant City of St. Paul's Motion to Dismiss [Doc. No. 32]; (3) Defendant City of Minneapolis' Motion to Dismiss or for Severance [Doc. No. 37]; (4) Defendant Metropolitan Council's Motion to Dismiss or to Sever [Doc. No. 46]; (5) Defendants City of Bloomington, City of Brooklyn Center, City of Brooklyn Park, City of Burnsville, City of Dayton, City of Eden Prairie, City of Golden Valley, City of Hopkins, City of Maple Grove, City of Monticello, City of Plymouth, City of Prior Lake, City of Richfield, City of Roseville, City of St. Louis Park, City of Wayzata, and Lakes Area Police Department's Motion to Dismiss and/or to Sever [Doc. No. 57]; (6) Defendants Freeborn County, Mille Lacs County, Rice County, Stearns County, Steele County, and Washington County's Motion to Dismiss and/or to Sever [Doc. No. 63]; (7) Defendant Ramsey County's Motion to Dismiss or for Severance [Doc. No. 67]; (8) Defendant City of Edina's Motion for Judgment on the Pleadings and/or to Sever [Doc. No. 83]; and (9) Defendant Commissioners Ramona Dohman and Michael Campion's Motion to Dismiss [Doc. No.

73].  For the reasons set forth below, the Court grants in part and denies in part these motions.

## II.    BACKGROUND

Plaintiff Patricia Mae Kerr Karasov ("Plaintiff" or "Karasov") filed this action on May 13, 2014, against the municipal, county, and individual Defendants listed above. (See Compl. [Doc. No. 1].)  Plaintiff asserts a single claim in her Complaint against all Defendants ("Count I").  In Count I, Plaintiff states a claim under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, against all Defendants.  (Id. ¶¶ 331– 53.)

Plaintiff's claims are centered on allegations that law enforcement personnel viewed her private driver's license information in the Minnesota Department of Vehicle Services ("DVS") driver's license database and the Bureau of Criminal Apprehension ("BCA") database [collectively "DPS database"] without a legitimate purpose.  (See id. ¶¶ 1–3.) Specifically, Plaintiff alleges that law enforcement personnel may have accessed her personal information for purely personal reasons because of their interest in her prior role as a Hennepin County District Court Judge.  (See id. ¶¶ 43–175.)  Karasov served as a Hennepin County District Court Judge from 1995 until 2013, when she retired.  (Id. ¶ 24.)

Plaintiff alleges that during her tenure as a state court judge, she was the subject of an investigation initiated by the judicial branch of the State of Minnesota, because although state court judges are required to reside within the county for which they serve, Karasov "allegedly resid[ed] outside of Hennepin County."  (Id. ¶¶ 25, 28.)  The investigation took place from 2010 through 2011.  (Id.)  As a result of this investigation, a "widely publicized

disciplinary proceeding" took place in "early January 2011." (Id. ¶ 26.) On November 16, 2011, at the conclusion of this proceeding, the Minnesota Supreme Court found that Karasov had committed judicial misconduct by residing outside of Hennepin County, while she served as a Hennepin County judge. (Id. ¶ 27.) Karasov was subsequently "censured and suspended without pay for six months." (Id.)

In 2013, Plaintiff contacted Kim Jacobson at the Minnesota Department of Public Safety ("DPS") and requested an audit of the number of times her name was run on the DPS database. (Id. ¶ 266.) On April 16, 2013, Jacobson provided the results of the audit to Karasov. (Id. ¶ 268.) Karasov alleges that she learned from the audit results that officers from various departments and agencies accessed her driver's license information over 200 times between 2003 and 2011. (Id. ¶ 270; see Compl., Ex. A. [Doc. No. 1-1].) Karasov claims that the audit results "severely disturbed" her, and "she had the feeling [that] she was being stalked." (Compl. ¶ 271 [Doc. No. 1].) Plaintiff was particularly upset to "learn that users from different agencies were obtaining her records on the same day and times, indicating some sort of discussion or other concert of activity about her between different agencies." (Id. ¶ 273.)

For example, "the officers from the City of Dayton and Stearns County obtained Karasov's private data [allegedly] within one hour of each other on January 4, 2011. [Additionally,] [o]n the same day, officers from the City of Minneapolis also obtained her data." (Id. ¶ 181.) On January 5, 2011, "[o]fficers from Otter Tail County, [the City of] Dayton, Ramsey County, the Department of Natural Resources ["DNR"], [the City of] Burnsville, and [the City of] Minneapolis also [allegedly] obtained her information." (Id. ¶

182.)  On January 6, 2011, "officers from [the City of] St. Paul, Steele County, [the City of]

Minneapolis, Hennepin County, and Freeborn County all [allegedly] obtained Karasov's

information."  (Id. ¶ 183.)  This apparent concert of activity began as early as 2010.  On

October 13, 2010 "officers from the Cit[ies] of Roseville and Minneapolis [allegedly]

obtained her data.  [And] [o]n October 7, [2010] officers from the City of Minneapolis and

the DNR also [allegedly] obtained her data."  (Id. ¶ 186.)

The chart below itemizes the number of lookups allegedly made by each Defendant

for a purpose not permitted under the DPPA:

| Entity | Number of times accessed |
|---|---|
| Caplan Law Firm | 1 (id. ¶ 43.) |
| City of Bloomington | 5 (id. ¶ 47.) |
| City of Brooklyn Center | 7 (id. ¶ 51.) |
| City of Brooklyn Park | 9 (id. ¶ 55.) |
| City of Burnsville | 3 (id. ¶ 59.) |
| City of Dayton | 9 (id. ¶ 63.) |
| City of Eden Prairie | 1 (id. ¶ 67.) |
| City of Edina | 8 (id. ¶ 71.) |
| City of Golden Valley | 3 (id. ¶ 75.) |
| City of Hopkins | 1 (id. ¶ 95.) |
| City of Maple Grove | 2 (id. ¶ 99.) |
| City of Minneapolis | 67 (id. ¶ 107.) |
| City of Minnetonka | 6 (id. ¶ 111.) |
| City of Monticello | 1 (id. ¶ 115.) |
| City of Plymouth | 6 (id. ¶ 123.) |
| City of Prior Lake | 4 (id. ¶ 127.) |
| City of Richfield | 1 (id. ¶ 139.) |
| City of Roseville | 1 (id. ¶ 143.) |
| City of St. Louis Park[1] | 1 (id. ¶ 147.) |
| City of St. Paul | 1 (id. ¶ 151.) |
| City of Wayzata | 2 (id. ¶ 167.) |
| Hennepin County | 57 (id. ¶¶ 79, 83, 87, 91.) |
| Mille Lacs County | 1 (id. ¶ 103.) |
| Otter Tail County[2] | 1 (id. ¶ 119.) |

[1]    Although Plaintiff states in paragraph 147 of her Complaint that officers employed by "the City of St. Paul obtained" her private data in violation of the DPPA one time (id. ¶ 147), the Court assumes that this statement was a typographical error because in paragraphs 148, 149, and 150, Plaintiff proceeds by discussing St. Louis Park's obtainment and use of her private data (id. ¶¶ 148–50).  This assumption is bolstered by the fact that according to the audit report, an officer from the St. Louis Park Police Department allegedly accessed Karasov's data once.  (See Compl., Ex. A at 13 [Doc. No. 1-1].)  Moreover, in paragraph 151, Plaintiff discusses a lookup made by a City of St. Paul officer.  (See Compl. ¶ 151 [Doc. No. 1].)

[2]    Although Plaintiff discusses Otter Tail County within her Complaint, Otter Tail County is not listed as a Defendant in the caption of the case and was not served a

| Ramsey County | 6 (id. ¶ 131.) |
|---|---|
| Rice County | 1 (id. ¶ 135.) |
| Stearns County | 2 (id. ¶ 155.) |
| Steele County | 4 (id. ¶ 159.) |
| Washington County | 1 (id. ¶ 163.) |
| Freeborn County | 1 (Compl., Ex. A at 4 [Doc. No. 1-1].) |
| Metropolitan Council | 1 (id. at 8.) |
| Lakes Area Police Department | 1 (id.) |

Plaintiff alleges that the searches detailed above were not based on any legitimate

law enforcement, governmental, judicial, or litigation-related purpose.  (Id. ¶¶ 41, 276 [Doc.

No. 1].)  Rather, Karasov claims that these inquiries were a result of governmental

employees' curiosity about, romantic attraction to, or animus toward, Karasov.  (Id. ¶ 276.)

Plaintiff describes the driver's license information at issue.  She alleges that

individual Defendants viewed the following private information: "home address, color

---

summons or Complaint.  Likely, Karasov's failure to serve Otter Tail County was
inadvertent.  Proper service of a summons and complaint on a defendant is a prerequisite
for a defendant to answer.  See Norsyn, Inc. v. Desai, 351 F.3d 825, 830 (8th Cir. 2003).
In fact, if a defendant is not properly served, their obligation to answer is not triggered.
See id.
        Federal Rule of Civil Procedure 4(m) provides that if the summons and complaint
are not served upon a defendant within 120 days after the filing of the complaint, the
Court "must dismiss the action without prejudice against that defendant or order that
service be made within a specified time.  But if the plaintiff shows good cause for the
failure, the court must extend the time for service for an appropriate period."  See Fed. R.
Civ. P. 4(m); see also Bullock v. United States, 160 F.3d 441, 442 (8th Cir. 1998).
        Here, Karasov filed her Complaint more than 120 days ago.  (See Compl. [Doc.
No. 1].)  Plaintiff has not shown good cause for her failure to serve Otter Tail County.
Therefore, the Court uses its discretion to direct Plaintiff to serve Otter Tail County with
a summons and Complaint no later than ten days after the date of this Order.  If Plaintiff
fails to do so, the Court dismisses this action against Otter Tail County without prejudice.

photograph or image, date of birth, eye color, height, weight, driver['s] identification number, and upon information and belief, [and] social security information." (Id. ¶ 174.) Karasov also alleges that the DPS database includes drivers' health information, presumably including her own medical information. (Id. ¶ 252.) Karasov claims that when she submitted all of this private data, she relied on "the promise of confidentiality made by DPS." (Id. ¶ 292–93.) The Court held oral argument on all of the aforementioned motions on October 16, 2014. (See Minute Entry [Doc. No. 96].)[3]

## III.   DISCUSSION

### A.   Standard of Review

Defendants move to dismiss Plaintiff's Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Defendant City of Edina also moves for judgment on the pleadings pursuant to Rule 12(c). When evaluating a motion to dismiss, the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. School District of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached

---

[3]   The Court earlier ordered that, based on the parties' stipulation, it would rule on the Defendant Commissioners' motion based on the parties written submissions, without oral argument. (08/11/2014 Order at 1 [Doc. No. 77].)

to the complaint and documents that are necessarily embraced by the pleadings, <u>Mattes v.</u>

<u>ABC Plastics, Inc.</u>, 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public

records, <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir. 2007).[4]

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570

(2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative level."

<u>Id.</u> at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," will not pass muster.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

(citing <u>Twombly</u>, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]."  <u>Twombly</u>, 550

U.S. at 556.  These same standards apply to a motion for judgment on the pleadings under

Fed. R. Civ. P. 12(c).  <u>Clemons v. Crawford</u>, 585 F.3d 1119, 1124 (8th Cir. 2009);

<u>Gallagher v. City of Clayton</u>, 699 F.3d 1013, 1016 (8th Cir. 2012).

### B.  Plaintiff's Count I: DPPA Claims

Karasov asserts only one claim against all Defendants – that they impermissibly

accessed her private data for a purpose not permitted under the DPPA.  (<u>See</u> Compl. ¶¶

331–53 [Doc. No. 1].)  Below, the Court addresses each Defendant's motion and

arguments individually.

---

[4]    Attached to her Complaint, Plaintiff submitted a copy of an audit prepared by the
DPS showing individual accesses of Plaintiff's driver's license information by name, and
showing the "station" through which the officer obtained her information via the DPS
database [hereinafter, "DPS audit excerpt"].  (Compl., Ex. A [Doc. No. 1-1].)  The Court
references this document as needed throughout the Order.

### 1.   Defendant Hennepin County

Plaintiff alleges that Hennepin County officers impermissibly accessed her private data fifty-seven times. (See id. ¶¶ 79, 83, 87, 91.)  The DPS audit excerpt lists seventy-one obtainments by Hennepin County officials, but Plaintiff does not include the fourteen lookups made by officials at the Hennepin County Courts in the list of impermissible accesses made by Hennepin County.  (See Compl., Ex. A at 4–8 [Doc. No. 1-1].)

Hennepin County argues that Karasov's DPPA claim must be dismissed because: (1) Plaintiff's claim is barred by the statute of limitations; (2) her Complaint fails to plead a plausible DPPA claim against Hennepin County; and (3) the unnamed individual and supervisor Defendants from Hennepin County are entitled to qualified immunity.  (See Def. Hennepin County's Mem. at 4–5 [Doc. No. 29].)  Although Hennepin County also "adopts and incorporates the arguments of the other Defendants in this action," (id. at 4 n.2), the Court addresses all of Hennepin County's co-Defendants specific arguments in subsequent sub-sections of this order.  The Court addresses Hennepin County's three arguments below.

### a.   Statute of Limitations

"[W]hen it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (citation omitted).  Although, the DPPA does not contain its own statute of limitations provision, the parties agree that 28 U.S.C. § 1658(a)'s general four-year limitations period for civil actions arising under federal law applies.  See 28 U.S.C. § 1658(a); (Def. Hennepin

County's Mem. at 5 [Doc. No. 29]; Pl.'s Resp. to Def. City of Minneapolis at 4 [Doc. No. 44][5].)

However, the parties dispute when a DPPA cause of action accrues for purposes of determining when the four-year limitations period begins to run.  Defendant asserts that the standard, or injury-occurrence, rule should apply, while Plaintiff argues that the discovery rule should apply.  Under the standard rule, "a claim accrues 'when the plaintiff has a complete and present cause of action.'"  Gabelli v. S.E.C., 133 S. Ct. 1216, 1220 (2013) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).  The discovery rule, on the other hand, "delays accrual of a cause of action until the plaintiff has 'discovered' it."  Merck & Co. v. Reynolds, 559 U.S. 633, 644 (2010).  According to the Supreme Court's holding in Gabelli, the discovery rule is an exception to the standard rule, applied only when a defendant's deceptive conduct prevents a plaintiff from even knowing that she or he has been defrauded.  Gabelli, 133 S. Ct. at 1221.

Although the Supreme Court and United States Court of Appeals for the Eighth Circuit have not ruled on which accrual rule to apply in a DPPA case, lower courts have addressed this issue.  Courts in this District have resoundingly held that the standard rule for accrual applies, such that a DPPA cause of action accrues at the time the improper access of information occurs.[6]  See, e.g., Kennedy v. City of Braham, _ F. Supp. 3d _,

---

[5]     Karasov incorporated the statute of limitations argument articulated in her response brief to Defendant City of Minneapolis' Motion to Dismiss.  (See Pl.'s Resp. to Def. Hennepin County at 20 [Doc. No. 42].)

[6]     Plaintiff asserts that the court in English v. Parker, No. 6:09-cv-1914-Orl-31GJK, 2011 WL 1842890 (M.D. Fla. May 16, 2011), used the discovery rule to determine the time of accrual under § 1658(a) in the context of a DPPA claim.  (See Pl.'s Resp. to Def.

No. 14-cv-226 (SRN/SER), 2014 WL 7073322, at *17, (D. Minn. Dec. 12, 2014); <u>Rollins v. City of Albert Lea</u>, No. 14-cv-299 (SRN/HB), 2014 WL 7534658, at *16 (D. Minn. Dec. 17, 2014); <u>Mallak v. Aitkin County</u>, 9 F. Supp. 3d 1046, 1053–55 (D. Minn. 2014); <u>Sheila Potocnik v. Carlson</u>, 9 F. Supp. 3d 981, 993–94 (D. Minn. 2014); <u>Bass v. Anoka County</u>, 998 F. Supp. 2d 813, 819–20 (D. Minn. 2014); <u>Brian Potocnik v. Anoka County</u>, No. 13-cv-1103 (DSD/TNL), 2014 WL 683980, at *2 (D. Minn. Feb. 21, 2014); <u>McDonough v. Al's Auto Sales, Inc.</u>, No. 13-cv-1889 (DSD/FLN), 2014 WL 683998, at *2 (D. Minn. Feb. 21, 2014); <u>Rasmussen v. Chisago County</u>, 991 F. Supp. 2d 1065, 1079 (D. Minn. 2014); <u>Kampschroer v. Anoka Cnty.</u>, _ F. Supp. 3d _, No. 13-cv-2512 (SRN/TNL), 2014 WL 5530590, at *6–7 (D. Minn. Nov. 3, 2014); <u>Kost v. Hunt</u>, 983 F. Supp. 2d 1121, 1126–30 (D. Minn. 2013) (finding that the exceptional nature of the discovery rule, the text and structure of § 1658, and the substantive area covered by the DPPA, all support application of the standard rule).

Those courts' holdings are consistent with the Supreme Court's description of when the discovery rule should apply.  In <u>TRW Inc. v. Andrews</u>, the Supreme Court

---

City of Minneapolis at 26 [Doc. No. 44].)  In that case, the court stated that there was not enough information upon which to grant summary judgment on statute of limitations grounds.  Plaintiff contends that the <u>English</u> Court's comment that it could not tell "when Mark English was or should have become aware that his records were being accessed" would be superfluous if the court was applying the injury-occurrence rule.  (<u>See id.</u>)  The Court disagrees with Karasov's characterization of the <u>English</u> Court's holding.  In <u>English</u>, the court did not select which statute of limitations rule to apply.  Rather, the phrase that Plaintiff takes issue with was simply part of a list of information that the court determined would have been relevant to the application of the standard rule *and/or* the discovery rule.  <u>English</u>, 2011 WL 1842890, at *5.  Therefore, the court did not reach the question of whether the standard rule or discovery rule would apply to the plaintiff's DPPA claim.

13

limited application of the discovery rule to a few contexts: fraud or concealment, latent disease, and medical malpractice. <u>See</u> 534 U.S. 19, 27 (2001). Accordingly, here, the Court applies the standard rule for accrual to Plaintiff's DPPA claims.

Despite this precedent, Plaintiff argues that the Court should apply the discovery rule because "Congress provided no directive on the applicability of the discovery or injury-occurrence rules when referring to § 1658(a)." (<u>See</u> Pl.'s Resp. to Def. City of Minneapolis at 5–6 [Doc. No. 44].) She argues that because § 1658 applies the discovery rule in subsection (b)(1), and the injury-occurrence rule in subsection (b)(2), then Congress must not have intended the injury-occurrence rule to be the default rule for § 1658(a). (<u>Id.</u> at 6–7.) Karasov misreads § 1658. As this Court explained in <u>Rasmussen</u>, Congress amended § 1658 by adding only subsection (b), which incorporates the discovery rule. 991 F. Supp. 2d at 1082. However, when subsection (b) was added, Congress did not additionally amend subsection (a). <u>Id.</u> Since subsection (b) expressly incorporates the discovery rule and subsection (a) does not, through amending § 1658, Congress demonstrated that subsection (a) does *not* incorporate the discovery rule. <u>Id.</u> (citing <u>Gross v. Max</u>, 906 F. Supp. 2d 802, 812-13 (N.D. Ind. 2012)).

Plaintiff raises numerous arguments in an attempt to distinguish her case, and argues that the discovery rule applies to DPPA claims. First, Karasov contends that courts construing general statutes of limitation apply the discovery rule unless Congress manifests a different intent. (<u>See</u> Pl.'s Resp. to Def. City of Minneapolis at 5 (citing <u>Comcast of Ill. X v. Multi-Vision Elecs., Inc.</u>, 491 F.3d 938 (8th Cir. 2007) [Doc. No. 44].) Plaintiff relies in part on this Court's decision in <u>In re Weldeabzghi</u>, No. 11-cv-

03087 (SRN/SER), 2013 WL 717755 (D. Minn. Feb. 27, 2013).  (See id. at 19.)

Karasov's reliance on this case is misplaced.  In In re Weldeabzghi, this Court cited to

Eighth Circuit precedent establishing that claims accrue, for purposes of the statute of

limitations in 28 U.S.C. § 2401(a), "when the plaintiff 'either knew, or in the exercise of

reasonable diligence should have known, that [he or she] had a claim.'"  2013 WL

717755, at *6 (quoting Izaak Walton League of Am., Inc. v. Kimbell, 558 F.3d 751, 759

(8th Cir. 2009)).

  However, as discussed herein, Congress manifested a different intent for the

applicable statute of limitations period for 28 U.S.C. §1658(a).  The Court disagrees with

Plaintiff that by amending subsection (b), and not subsection (a), "Congress was silent on

the discovery or injury-occurrence rule."  (Pl.'s Resp. to Def. City of Minneapolis at 19

n.3 (emphasis original) [Doc. No. 44].)  In fact, in TRW Inc., the Supreme Court stated

that a directive from Congress need not be explicit – it may also be implied from the text

or structure of a particular statute.  TRW Inc., 534 U.S. at 27–28 (holding that the text

and structure of the Fair Credit Reporting Act ("FCRA") demonstrates that "Congress

implicitly excluded a general discovery rule by explicitly including a more limited one").

  Plaintiff also claims that Maverick Transp., LLC v. U.S. Dep't of Labor, Admin.

Review Bd., 739 F. 3d 1149 (8th Cir. 2014), supports her position that § 1658(a)

incorporates the discovery rule.  (See Pl.'s Resp. to Def. City of Minneapolis at 10 [Doc.

No. 44].)  In Maverick Transp., the Eighth Circuit found "no indication Congress

intended to exclude a version of the general discovery accrual rule from the [Surface

Transportation Assistance Act]."  Id. at 1154.  Here, however, the Court has already

demonstrated how Congress' amendment of § 1658 demonstrated that it indeed intended to exclude the discovery accrual rule from subsection (a).  Thus, <u>Maverick Transp.</u> does not support Karasov's position and is distinguishable.

Plaintiff also misapplies the Supreme Court's holding in <u>Gabelli</u>.  Plaintiff argues that in <u>Gabelli</u>, the Supreme Court did not rule out the applicability of the discovery rule "when a statute does not speak to the issue."  (See Pl.'s Resp. to Def. City of Minneapolis at 18 [Doc. No. 44].)  Although this is true, in <u>Gabelli</u>, the Supreme Court found that the statute in fact spoke to the statute of limitations issue.  Therefore, the <u>Gabelli </u>Court applied the standard rule because there was a "lack of textual, historical, or equitable reasons to graft a discovery rule onto the statute of limitations [in 28 U.S.C. § 2462]," which governs many penalty provisions.  <u>See</u> <u>Gabelli</u>, 133 S. Ct. at 1224.  Similarly, here, the relevant DPPA provision also speaks to the statute of limitations issue.  As the Court explained above, the textual amendments to the DPPA indicate Congress' intent for the standard accrual rule to apply to § 1658(a).

Finally, Plaintiff mischaracterizes her own experience of allegedly being "defrauded" by Defendant.  Karasov correctly states that the <u>Gabelli</u> Court refused to apply the discovery rule in the context of an SEC enforcement action because: (1) the SEC was dissimilar from a typical defrauded plaintiff, since it had powerful tools at its disposal to combat fraud; and (2) the SEC was not seeking typical relief, since it was seeking penalties as opposed to damages. (<u>See</u> Pl.'s Resp. to Def. City of Minneapolis at 8–12 (citing <u>Gabelli</u>, 133 S. Ct. at 1222–23) [Doc. No. 44].)  However, Plaintiff incorrectly characterizes herself as the typical defrauded plaintiff.  (<u>See</u> <u>id.</u> at 8.)

16

The nature of the injury addressed by the DPPA – the obtaining of motor vehicle record information for an impermissible purpose – is not in the same category as fraud, concealment, latent disease, or medical malpractice because there is no similarly deceptive conduct or concealment.  Rather, the violation occurs from accessing the information without a permissible purpose, which is more akin to the type of injury the FCRA is meant to address.  Moreover, although Plaintiff describes the accesses as "surreptitious, concealed, and hidden," these characterizations misstate the relevant facts. (Compl. ¶ 256 [Doc. No. 1].)  Plaintiff received her DPS audit in a timely fashion after she requested it in 2013.  (Id. ¶¶ 266, 268.)[7]  Thus, neither Defendant Hennepin County, nor any of the other Defendants, concealed their accesses.

While it is true that a plaintiff may not be aware of accesses of her personal data unless she requests an audit, not knowing about the lookups does not equate to fraud or purposeful concealment.  As a judge in this District noted in Mallak, "[m]erely being unknown is insufficient, the information must also be unknowable."  9 F. Supp. 3d at 1054–55 (internal citations omitted).  Accordingly, Plaintiff incorrectly analogizes her case to a series of cases that involve defendants who wrongfully concealed material facts. (See Pl.'s Resp. to Def. City of Minneapolis at 9–12 [Doc. No. 44].)  Simply because the purpose of the DPPA is to protect basic privacy rights (id. at 13), does not mean that the discovery rule applies, nor does it mean that the lookups of Plaintiff's information were

---

[7]     Plaintiff states in her response memorandum that the result of the DPS audit "was denied to her when she first requested it."  (See Pl.'s Resp. to Def. City of Minneapolis at 21 [Doc. No. 44].)  However, according to the factual allegations in her Complaint, Plaintiff's request was never denied.  The Court assumes that Plaintiff included this statement in her memorandum in error.

concealed from her (cf. id. at 14).  Therefore, the substantive area governed by the DPPA

does not require application of the discovery rule.

Based on the foregoing, the standard rule for accrual applies to Plaintiff's DPPA

claims.  The Complaint in this case was filed on May 13, 2014, so Plaintiff's DPPA

claims that are based on allegations of improper conduct occurring more than four years

prior to that date – i.e., prior to May 13, 2010 – are barred.  Accordingly, the Court finds

that fifty-four lookups made by officials from the Hennepin County Attorney's Office,

Hennepin County Community Corrections, Hennepin County Economic Assistance, and

the Hennepin County Sheriff's Office are barred, and not actionable.  (See Compl., Ex. A

at 4–7 [Doc. No. 1-1].)

However, the remaining three accesses that occurred after the cut-off date are

actionable.  (See id.)  Specifically, the actionable lookups include: (1) a February 4, 2011

lookup made by an official at the Hennepin County Attorney's Office (id. at 4); (2) a July

22, 2010 lookup made by an official at the Hennepin County Sheriff's Office (id. at 7);

and (3) a January 6, 2011 lookup also made by an official at the Hennepin County

Sheriff's Office (id.).

### b.  Plausibility

The Court proceeds by addressing the plausibility of the DPPA claims against

Defendant Hennepin County, which are not barred by the statute of limitations.

Defendant contends that Plaintiff failed to state a DPPA claim pursuant to Iqbal and

Twombly.  (Def. Hennepin County's Mem. at 12–13 [Doc. No. 29].)  To state a claim

under the DPPA, a plaintiff must allege that: (1) a defendant knowingly obtained, disclosed,

or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted. 18 U.S.C. § 2724(a). Here, the parties dispute whether the third element of the claim is pled sufficiently: whether Defendant obtained Plaintiff's private data "for a purpose not permitted."

Defendant argues that Karasov was required to plead facts that, if believed, would give rise to a reasonable inference that Defendant accessed her information with an impermissible purpose. (See Def. Hennepin County's Mem. at 13–15 [Doc. No. 29].) Defendant claims that Karasov failed to allege "specific factual allegations" that raise a plausible inference of an impermissible use by Defendant. (Id. at 15.) In her response, Plaintiff contends that she need not prove an impermissible purpose for each obtainment. (See Pl.'s Resp. to Def. Hennepin County at 13 [Doc. No. 42].) Rather, Plaintiff explains that she only needs to plausibly allege that "for whatever purpose Defendants obtained or used her information, it was not a permitted purpose under the statute." (Id.) The Court agrees.

The DPPA outlines fourteen permissible purposes for a government official to access an individual's private driver's license information. See 18 U.S.C. § 2721(b). Relevant for this case, a law enforcement officer may access an individual's personal information in order to carry out the functions of the law enforcement agency. See 18 U.S.C. § 2721(b)(1). Here, however, Plaintiff alleges that Defendant Hennepin County, and the other individual and Entity Defendants, did not access her information for any purposes permitted by the DPPA. (See Compl. ¶¶ 33, 41, 80–94 [Doc. No. 1].) Therefore, she has pled all the essential elements of her DPPA claims. Karasov is not shifting the burden to Defendant

19

to detail a proper purpose for the access of the data (see Def. Hennepin County's Mem. at 16 [Doc. No. 29]), though Defendant is welcome to offer such a purpose. Rather, she merely alleges that Defendant Hennepin County did not access her data for any of the statutorily permissible purposes outlined in the DPPA; and, as a result, Defendant's purpose was necessarily not permitted under the DPPA.

Furthermore, sufficient facts exist for the Court to infer that Plaintiff's personal information was obtained for a purpose not permitted under the DPPA. The Complaint alleges that:

- Karasov served as a Hennepin County District Court Judge from 1995 until 2013. (Compl. ¶ 24 [Doc. No. 1].)

- In 2010 and 2011, Karasov was investigated by the Minnesota Supreme Court for allegedly residing outside of Hennepin County. Moreover, a "widely publicized disciplinary proceeding was held in early January 2011." (Id. ¶ 25–26.)

- As a result of this investigation, on November 16, 2011, the Minnesota Supreme Court found that Karasov had committed judicial misconduct for living outside of Hennepin County. (Id. ¶ 27.)

- Plaintiff's personal information was searched for not by license plate number, but rather, by her name. (Id. ¶ 3.)

- Officers and personnel from several different departments and agencies accessed Karasov's private information approximately 200 times from 2003 to 2012. (Id. ¶ 2.)

- Karasov has never been advised that she was a suspect or even an interested party in any civil, criminal, administrative, or arbitral proceeding. (See, e.g., Compl. ¶¶ 49, 53, 57, 177 [Doc. No. 1].)

- Karasov has "not committed any act that would entitle Entity Defendants and individual Defendants to access her information under any of the permissible exceptions." (Id. ¶ 177.) Additionally, she has eliminated any accesses that

may have been permissible from the impermissible lookups alleged in her Complaint and itemized in the audit excerpt.  (Id. ¶ 42.)

- Officials from several agencies and departments accessed Karasov's private data within hours of one another.  For instance, officers employed by different Entity Defendants accessed Plaintiff's information within hours of one another on October 7 and 13, 2010, and on January 4, 5, and 6, 2011.  (Id. ¶ 181–86; see Compl., Ex. A [Doc. No. 1-1].)

Under Iqbal and Twombly, a complaint must contain facts with enough specificity "to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, Iqbal, 556 U.S. at 678.  Here, Plaintiff's cause of action is not supported by "mere conclusory statements."  Cf. id.  Rather, the facts listed above, altogether suggest that three actionable lookups by Defendant Hennepin County did not occur in the course of typical law enforcement functions.  Moreover, while the "volume of lookups alone is insufficient to allow a plaintiff to state a claim, it can be relevant factual support for a claim."  See Kolls v. City of Edina, et al., No. 14-cv-370 (DWF/HB), 2014 WL 5810332, at *5 (D. Minn. Nov. 7, 2014) (citing Mallak, 9 F. Supp. 3d at 1058).  Here, Plaintiff alleges that Defendant Hennepin County impermissibly accessed her data fifty-seven times.  (See Compl. ¶¶ 79, 83, 87, 91 [Doc. No. 1].)  Although most of these lookups are barred by the statute of limitations, the volume of lookups in this case is another factor that nudges this case across the "line from conceivable to plausible."  Twombly, 550 U.S. at 570.[8]

---

[8]     Consequently, the Court finds that this case is distinguishable from Mitchell v. Aitkin County, et al., No. 13-cv-2167, 2014 WL 835129 (D. Minn. Feb. 27, 2014).  Specifically, the Court finds that the facts presented by Plaintiff sufficiently establish a plausible inference or reflect an "outward manifestation" of an impermissible purpose to state a claim at this early stage.  This finding does not require an inference as to "what

These facts, therefore, distinguish this case from others in this District in which the courts found that the plaintiffs failed to state DPPA claims.  In some of these cases, the plaintiff unsuccessfully argued that a sheer number of accesses created a reasonable inference of a violation.  E.g., Bass, 998 F. Supp. 2d at 821; McDonough, 2014 WL 683998, at *3.  And, in Traub v. City of Saint Paul, the plaintiff relied on the lookups, her contemporaneous involvement in some publicized activity, and the absence of direct interaction with any defendant, to infer that the lookups were for an improper purpose. Traub v. City of Saint Paul, Civ. No. 13-3017 (MJD/JJK), 2014 WL 2881484, at *4 (D. Minn. June 25, 2014).  The Court, however, rejected such an inference, noting that:

> A total of twelve lookups have been alleged against eight Defendants; one look-up is alleged with respect to five Defendants; no more than three accesses are alleged by any one Defendant; and none of the motor vehicle record searches was conducted at a "questionable" time of day or night. There is no allegation that Plaintiff's records were accessed by name rather than license plate number, and there is no significant cluster of locations or law enforcement agencies making the record requests.

Id.

Unlike the plaintiffs in these cases, Karasov alleges that her information was accessed by name.  (Compl. ¶ 3 [Doc. No. 1].)  She also alleges that because of her role in the public eye between 2010 and 2011, as a Hennepin County Judge who was censured for misconduct, government officials had a motive to improperly access her private data.  (Id. ¶¶ 24–27.)  Also, as was the case with the attorney-plaintiff in Mallak, Karasov's role as a judge likely meant that she interacted with law enforcement officers from the various Entity

---

went on in a particular officer's mind" or an impermissible burden shift to Defendant. See id. at *5–9.

Defendants.  See Mallak, 9 F. Supp. 3d at 1058.  Therefore, Plaintiff's allegations are based on more than Karasov's mere "fame."  See id.; cf. Kolls, 2014 WL 5810332, at *5 (holding that the plaintiff failed to state a plausible DPPA claim because his allegation was based on only twenty-seven alleged lookups and the fact that he was a television reporter in the state).  Although Plaintiff did not provide a "detailed work history and community ties and activities relating to her role as [a judge] in the area," the facts that Plaintiff did allege are sufficient at this stage in the proceedings.  Cf. Kolls, 2014 WL 5810332, at *5.

Moreover, as in Kampschroer, where this Court found that the plaintiffs had raised a plausible inference of improper use based on concerning patterns, 2014 WL 5530590, at *10, here, Plaintiff points to instances where certain personnel from different cities looked up her information at the same time, or at least on the same day (Compl. ¶¶ 181–86 [Doc. No. 1]).  Plaintiff's DPPA allegations are bolstered by the fact that all of these lookups occurred while Plaintiff served as a state court judge, and some of these simultaneous lookups occurred during the Minnesota Supreme Court's investigation of Karasov.   (Id. ¶ 184.)  Thus, in sum, Karasov's factual allegations support the inference that the officials were looking up her data out of pure curiosity, and not for a permissible purpose.  See Twombly, 550 U.S. at 555.

At this early stage of litigation, Plaintiff need not plead – and indeed, does not know without discovery – the precise impermissible purpose for which her information was accessed.  See Smythe v. City of Onamia, No. 12-cv-3149 (ADM/LIB), 2013 WL 2443849, at *6 (D. Minn. June 5, 2013) (noting that "a person may still violate the DPPA if he retrieves motor vehicle records and does not misuse the information; simply retrieving

records without a permitted purpose is a violation."). Therefore, because Plaintiff

sufficiently pled that her personal information was knowingly obtained for a purpose not

permitted under the DPPA, dismissal of the DPPA claims against Defendant Hennepin

County is inappropriate.

### c.  Qualified Immunity

Finally, the Court considers whether officials from Hennepin County are entitled

to qualified immunity for Plaintiff's DPPA claims that are not barred by the statute of

limitations.  "Qualified immunity shields government officials from [personal] liability

and the burdens of litigation . . . unless the official's conduct violates a clearly established

constitutional or statutory right of which a reasonable person would have known."

Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013).  Thus, determining whether

qualified immunity applies involves consideration of two questions: (1) whether the facts

alleged constitute a violation of a constitutional or statutory right; and (2) whether that

right was "clearly established" at the time of the alleged violation.  LaCross v. City of

Duluth, 713 F.3d 1155, 1157–58 (8th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194,

201 (2001)).

As for the second question, "'[a] Government official's conduct violates clearly

established law when, at the time of the challenged conduct, the contours of a right are

sufficiently clear that every reasonable official would have understood that what he is

doing violates that right.'"  Williams v. Herron, 687 F.3d 971, 977 (8th Cir. 2012)

(quoting Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2083 (2011)).  The court must

look to the state of the law at the time the alleged misconduct occurred.  Id. (citation

omitted).  Although there need not have been a case directly on point in order for the law

to have been clearly established, "'existing precedent must have placed the statutory or

constitutional question beyond debate.'"  Smith v. City of Minneapolis, 754 F.3d 541,

546 (8th Cir. 2014) (quoting al-Kidd, 131 S. Ct. at 2083).

As discussed above, Plaintiff sufficiently alleged that Defendant Hennepin County

violated her statutory rights under the DPPA.  However, Defendant argues that, even

assuming that access of a motor vehicle record constitutes a violation of the DPPA, it was

not "clearly established" that such conduct violated the DPPA at the time the alleged

lookups occurred.  (See Def. Hennepin County's Mem. at 17 [Doc. No. 29].)  Plaintiff, on

the other hand, argues that the statutory language itself provided sufficient notice to

Defendant that obtaining private driver's license information without a permissible

purpose was prohibited.  (See Pl.'s Resp. to Def. Hennepin County at 21–22 [Doc. No.

42].)

The Court agrees with Karasov.  The DPPA, enacted in 1994, clearly prohibits

"knowingly obtain[ing] . . . personal information, from a motor vehicle record, for a

purpose not permitted."  18 U.S.C. § 2724.  By the time the alleged lookups began in

2003 – nine years after the DPPA took effect – Hennepin County officials would have

been on notice of the statute and its prohibitions.  See Mallak, 9 F. Supp. 3d at 1063.

Here, as was the case in Kampschroer, the unlawfulness of Defendant's alleged

conduct would have been readily apparent to Defendant at the time it occurred because

that conduct contravenes the plain language of the statute.  See Collier v. Dickinson, 477

F.3d 1306, 1311 (11th Cir. 2007) (denying qualified immunity because the DPPA's plain

language prohibiting the release of personal information without the express consent of

the person to whom the information relates "gave clear notice" to the defendant

government officials that the release of such information without consent violated federal

law).  Accordingly, at this stage of the proceedings – where Plaintiff has adequately

alleged the violation of a clearly established statutory right – Defendant Hennepin County

is not entitled to qualified immunity on Plaintiff's DPPA claims not barred by the statute

of limitations.

### 2.  Defendant City of St. Paul

Defendant City of St. Paul also filed a Motion to Dismiss or to Sever Plaintiff's

Complaint [Doc. No. 32].  Although the City of St. Paul's supporting memorandum was

brief and focuses mainly on the implausibility of Plaintiff's claims, it adopts and

incorporates by reference any and all arguments submitted by co-Defendants in this

matter.  (See Def. City of St. Paul's Mem. at 4 n.1 [Doc. No. 34].)  Therefore, the Court

proceeds by addressing how Plaintiff's claim against the City of St. Paul is affected by

(1) the statute of limitations; (2) the plausibility standard under Iqbal and Twombly; and

(3) the qualified immunity defense.

### a.  Statute of Limitations

Consistent with the Court's discussion in Section III(B)(1)(a), the Court applies

the standard rule for accrual to Plaintiff's DPPA claims against Defendant City of St.

Paul.  Therefore, Plaintiff's DPPA claims that are based on allegations of improper

conduct occurring prior to May 13, 2010 are barred.

Karasov alleges that the City of St. Paul impermissibly accessed her data only once.  (Compl. ¶ 151 [Doc. No. 1].)  In the DPS audit excerpt that Plaintiff attached to her Complaint, she notes that an unnamed officer from the St. Paul Police Department obtained her private data on January 6, 2011.  (See Compl, Ex. A at 13 [Doc. No. 1-1].) This single access is not barred by the statute of limitations, and is thus actionable.

### b.  Plausibility

As with Plaintiff's DPPA claims against Defendant Hennepin County, the Court finds that Karasov plausibly stated a claim upon which relief can be granted.  Defendant incorrectly states that Plaintiff's cause of action is based on mere conclusory statements. (See Def. City of St. Paul's Mem at 5–6 [Doc. No. 34].)  In fact, Plaintiff's Complaint contains several facts, which, read as a whole, allege that a City of St. Paul official accessed Plaintiff's data for a purpose not permitted by the DPPA.  (See Compl. ¶¶ 24– 27, 152–53 [Doc. No. 1].)  As the Court has explained in detail above, the DPPA does not require Karasov to detail the City of St. Paul official's impermissible purpose for accessing her data.  Instead, the statute merely requires Plaintiff to allege that the official's motive for accessing her data was not one of the permissible purposes outlined in the DPPA.  See 18 U.S.C. § 2721(b).  In sum, the Court finds that Karasov has sufficiently pled enough facts to infer that the City of St. Paul police officer accessed her data for a purpose not permitted.

### c.  Qualified Immunity

Insofar as Defendant City of St. Paul adopts the defense of qualified immunity that other Entity Defendants have raised (See Def. City of St. Paul's Mem. at 4 n.1 [Doc. No.

34]), the Court finds that the City of St. Paul and its officials and supervisors are not entitled to qualified immunity for the same reasons that Defendant Hennepin County is not entitled to the defense.

### 3.  Defendant City of Minneapolis

On June 26, 2014, Defendant City of Minneapolis also filed a Motion to Dismiss and/or to Sever [Doc. No. 40].  Like Hennepin County, the City of Minneapolis also raises three arguments detailing why Plaintiff's DPPA claim should be dismissed: (1) Plaintiff's claim is barred by the statute of limitations; (2) her Complaint fails to plead a plausible claim; and (3) the unnamed individual and supervisor Defendants from the City of Minneapolis are entitled to qualified immunity. [9]

### a.  Statute of Limitations

Consistent with the Court's ruling on Plaintiff's DPPA claims against other Defendants in this case, the Court applies the standard rule for accrual to Plaintiff's DPPA claims against Defendant City of Minneapolis.  Therefore, Plaintiff's DPPA claims that are based on allegations of improper conduct occurring prior to May 13, 2010 are barred.

Karasov alleges that officials from the City of Minneapolis impermissibly accessed her private data sixty-seven times.  (Compl. ¶ 107 [Doc. No. 1]; see Compl., Ex. A at 8–11 [Doc. No. 1-1].)  According to the DPS audit excerpt that Plaintiff attached to her Complaint, forty-nine of theses accesses occurred before May 13, 2010.  (See Compl., Ex.

---

[9]     The City of Minneapolis also joins all arguments of its co-Defendants in this matter. (See Def. City of Minneapolis' Mem. at 4 n.2 [Doc. No. 40].)

A at 8–11 [Doc. No. 1-1].)  Therefore, those accesses are barred by the statute of limitations.

However, eighteen lookups made by Minneapolis Police Department officers occurred after

the cut-off date.  (See id. at 11.)  Thus, those eighteen allegedly impermissible accesses are

actionable.

While Defendant City of Minneapolis contends that multiple accesses which

occurred close in time to one another should be counted as a single access by Defendant

(cf. Def. City of Minneapolis' Mem. at 6 n.3 [Doc. No. 40]), the Court disagrees.  The

DPPA provides a limited private right of action, authorizing suit against "a person who

knowingly obtains, discloses or uses personal information, from a motor vehicle record,

for a purpose not permitted under" the statute.  18 U.S.C. § 2724(a).  According to

Kampschroer, Mallak, and Nelson v. Jesson seeking or viewing information is sufficient

for "obtaining" it under the DPPA.  See Kampschroer, 2014 WL 5530590, at *9; Mallak,

9 F. Supp. 3d at 1056–58; Nelson v. Jesson, No. 13-cv-340 (RHK/JJK), 2013 WL

5888235, at *2 (D. Minn. Nov. 1, 2013).  Therefore, every time an official employed by

Defendants viewed and accessed Karasov's private data, her information was "obtained."

Accordingly, Plaintiff has a DPPA claim based on each individual access, despite the fact

that they occurred in close succession to one another.

### b.  Plausibility

As with Plaintiff's DPPA claims against other Defendants in this case, the Court

finds that Karasov plausibly stated a claim upon which relief can be granted.  Defendant

City of Minneapolis articulates four reasons why Plaintiff fails to state a plausible claim

against the City of Minneapolis.  First, Defendant asserts that the accesses that occurred

around the time of Karasov's judicial misconduct hearing do not "stand out as 'significant' when considered with[in] the history of accesses [allegedly made by Minneapolis police officers]."  (See Def. City of Minneapolis' Mem. at 22 [Doc. No. 40].)  Specifically, Defendant contends that although Plaintiff alleges that the accesses in January 2011 coincide with her "highly-publicized hearing," in fact, "Plaintiff's information was accessed [by Minneapolis police officers] . . . more times prior to the hearing than during or after [the hearing]."  (See id. at 23.)  Thus, the City of Minneapolis argues that Plaintiff fails to allege facts that support a "reasonable inference" that Minneapolis police officers had an impermissible purpose when accessing her data.  (See id. (citing Kost, 983 F. Supp. 2d at 1135–36.))  The Court disagrees.

Although it is true that based on the DPS audit excerpt, Minneapolis police officers accessed Plaintiff's private data well before Plaintiff was the subject of a judicial misconduct investigation, that fact alone is not sufficient to make Karasov's DPPA claims implausible.  It is not unreasonable to infer that the lookups made during 2010 and 2011 were related to the highly publicized judicial misconduct proceeding, and that the earlier lookups were a result of Defendant's curiosity about Plaintiff given her occupation and likely interaction with law enforcement officers.  The 2010 and 2011 obtainments need not be "significant" compared to obtainments made prior to 2010.  (Cf. id. at 22.)  Rather, reading the facts alleged in the Complaint as a whole, the lookups need only "raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

Second, Defendant claims that Plaintiff's allegations do not rise above the speculative level because Karasov does not allege any contact with a specific officer to support her DPPA claim.  (See Def. City of Minneapolis' Mem. at 24 [Doc. No. 40].)  Defendant relies heavily upon the Mitchell Court's statement that DPPA claims that rise above the speculative level "generally include[] some indication of a connection or interaction between an identifiable law enforcement officer and the plaintiff, from which the asserted impropriety of the officer's retrieval of the plaintiff's data can be plausibly inferred."  Mitchell, 2014 WL 835129, at *8.  Defendant misstates Plaintiff's burden of proof.  At the motion to dismiss stage, Plaintiff is not required to demonstrate that she has a connection to a particular law enforcement officer.  Rather, the totality of the facts alleged in Karasov's Complaint must simply be pled with enough specificity "to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Here, Karasov alleges a series of facts that the Court reads as a whole to plausibly infer that officials from the City of Minneapolis impermissibly accessed her private data.  These facts include: her role as a Hennepin County District Court Judge; the very public investigation and subsequent proceeding by the Minnesota Supreme Court pertaining to her judicial misconduct; more than 200 alleged total lookups of Plaintiff's private data by Plaintiff's name; and no involvement in any law enforcement proceedings or investigations.  (See Compl. ¶¶ 24–27; 177 [Doc. No. 1].)

Third, Defendant argues that Plaintiff's claim is implausible because she fails to provide a factual basis for why her information was accessed.  (See Def. City of Minneapolis' Mem. at 25–26 [Doc. No. 40].)  The Court disagrees.  Plaintiff is not

required to identify what the alleged impermissible purpose might have been.  Instead, she only needs to allege that her data was plausibly accessed for a purpose not permitted by the DPPA.  Here, Karasov has met that burden.  Although Defendant correctly notes that the sheer volume of lookups alone is insufficient to support a DPPA claim (see Def. City of Minneapolis' Mem. at 26 [Doc. No. 40]), in this case, Karasov alleges additional facts.  These additional facts include, but are not limited to, her role as a Hennepin County judge, the public investigation and subsequent censure by the Minnesota Supreme Court, and obtainments of Plaintiff's private data that were made by searching for Plaintiff by name.  Construing all reasonable inferences in the light most favorable to Plaintiff, the Court reads Plaintiff's Complaint as alleging sufficient facts suggesting that City of Minneapolis officials accessed Karasov's information for an impermissible purpose.  See Morton, 793 F.2d at 187.

Finally, Defendant City of Minneapolis argues that Plaintiff's DPPA claim is implausible because "[t]he fact that Plaintiff was the subject of a judicial misconduct hearing is not sufficient to demonstrate accesses by Minneapolis were impermissible."  (See Def. City of Minneapolis' Mem. at 27 [Doc. No. 40].)  Defendant minimizes the additional facts that Karasov alleges in her Complaint, and misstates Plaintiff's burden for surviving a motion to dismiss.  As the Court previously noted, Karasov further alleges several facts to substantiate her DPPA claims.  Moreover, Defendant's implication that Karasov needs to allege significantly more facts to have a plausible DPPA claim is incorrect.  As the Court explained above, Karasov need only "raise a reasonable expectation that discovery will reveal evidence of [the claim]."  Twombly, 550 U.S. at 556.

32

### c.  Qualified Immunity

The City of Minneapolis also argues that Plaintiff's Complaint should be dismissed because City of Minneapolis officials are entitled to qualified immunity for Plaintiff's DPPA claims.  (See Def. City of Minneapolis' Mem. at 28–29 [Doc. No. 40].)  The Court finds that the City of Minneapolis and its officials and supervisors are not entitled to qualified immunity for the same reasons that the other Defendants in this case are not entitled to this defense.

### 4.  Defendant Metropolitan Council

On July 24, 2014, Defendant Metropolitan Council filed a Motion to Dismiss or to Sever [Doc. No. 46].  The Metropolitan Council bases its Motion to Dismiss primarily on two grounds: (1) Plaintiff's DPPA claim is barred by the statute of limitations; and (2) Plaintiff failed to state a claim on which relief may be granted.  (See Def. Metropolitan Council's Mem. at 3–4 [Doc. No. 49].)  Like other Defendants, the Metropolitan Council also adopts and incorporates the arguments of its co-Defendants.  (See id. at 3 n.2 [Doc. No. 49].)  However, because the Metropolitan Council's alleged sole access is time barred, the Court limits its discussion to Defendant's statute of limitations argument.

Although Karasov does not discuss her claims against the Metropolitan Council in her Complaint, the audit she attached to her Complaint lists one allegedly impermissible access by an official at the Metropolitan Council.  (See Compl., Ex. A at 8 [Doc. No. 1-1].) The entry in the DPS audit excerpt lists an access by "Metro Transit PD."  (See id.) Defendant Metropolitan Council concedes that the Metro Transit Police Department is an operating division of the Council.  (See Def. Metropolitan Council's Mem. at 2 n.1 [Doc.

No. 49].)  Nonetheless, Plaintiff does not have an actionable claim against the Metropolitan

Council because the alleged access occurred on October 5, 2004.  (See Compl., Ex. A at 8

[Doc. No. 1-1].)  Appling the standard rule of accrual, Plaintiff's DPPA claim based on

this obtainment is barred because the lookup occurred prior to May 13, 2010.  Therefore,

the Court grants the Metropolitan Council's Motion to Dismiss in its entirety.

### 5.  Defendants City of Bloomington, et al.

Defendants City of Bloomington, City of Brooklyn Center, City of Brooklyn Park,

City of Burnsville, City of Dayton, City of Eden Prairie, City of Golden Valley, City of

Hopkins, City of Maple Grove, City of Monticello, City of Plymouth, City of Prior Lake,

City of Richfield, City of Roseville, City of St. Louis Park, City of Wayzata, and Lakes

Area Police Department [hereinafter, "Defendants City of Bloomington, et al."] also filed a

Motion to Dismiss and/or to Sever [Doc. No. 57].  Defendants base their motion on two

arguments: (1) Plaintiff's claims are barred by the statute of limitations; and (2) Plaintiff's

DPPA claims are not plausible.  (See Defs. City of Bloomington, et al.'s Mem. at 5, 9 [Doc.

No. 60].)  The Court proceeds by addressing both arguments in turn.

### a.  Statute of Limitations

Consistent with the Court's finding above, the Court applies the standard rule for

accrual to Plaintiff's DPPA claims against Defendants City of Bloomington, et al.

Therefore, Plaintiff's DPPA claims that are based on allegations of improper conduct

occurring prior to May 31, 2010 are barred.

Karasov alleges that the City of Bloomington impermissibly accessed her data five

times.  (Compl. ¶ 47 [Doc. No. 1].)  In the DPS audit excerpt that Plaintiff attached to her

Complaint, she lists five accesses that occurred on July 3, 2004; February 3, 2005; January 1, 2008; May 13, 2008; and May 13, 2008.  (See Compl., Ex. A at 1 [Doc. No. 1-1].)  Each of these accesses precedes the May 13, 2010 cut-off date for actionable claims.  Therefore, all of Plaintiff's DPPA claims against Defendant City of Bloomington are dismissed.

Plaintiff alleges that City of Brooklyn Center police officers violated the DPPA by impermissibly accessing her data seven times.  (Compl. ¶ 51 [Doc. No. 1].)  The DPS audit excerpt demonstrates that officers from the City of Brooklyn Center accessed Karasov's data seven times throughout 2003, 2004, 2005, 2006, and 2009.  (See Compl., Ex. A at 1 [Doc. No. 1-1].)  Because all of these obtainments occurred prior to May 13, 2010, Plaintiffs DPPA claims against the City of Brooklyn Center are dismissed in their totality.

Karasov alleges that officers from the City of Brooklyn Park impermissibly accessed her private data nine times.  (Compl. ¶ 55 [Doc. No. 1].)  Although Karasov only alleges nine impermissible accesses, according to the DPS audit excerpt, an officer from the City of Brooklyn Park Police Department allegedly accessed Karasov's data ten times during 2004, 2005, 2007, and 2008.  (See Compl., Ex. A at 1–2 [Doc. No. 1-1].)  Whether or not the Court considers all ten lookups, or only nine of the lookups, each of the lookups precedes the statute of limitations cut-off date.  Therefore, Plaintiff's DPPA claims against the City of Brooklyn Park are dismissed in their entirety.

Plaintiff claims that an officer from the City of Burnsville Police Department impermissibly accessed her private data three times.  (Compl. ¶ 59 [Doc. No. 1].)  The DPS

audit excerpt demonstrates that an officer accessed her data twice on April 19, 2006, and once on January 5, 2011. (<u>See</u> Compl., Ex. A at 2 [Doc. No. 1-1].) Plaintiff's claims based on the April 19, 2006 accesses are dismissed because they are barred by the statute of limitations. Accordingly, Plaintiff's DPPA claim against the City of Burnsville is limited to a single access on January 5, 2011.

Karasov alleges that officials from the City of Dayton violated the DPPA by accessing her data nine times. (Compl. ¶ 63 [Doc. No. 1].) The DPS audit excerpt shows that four of these lookups occurred on October 26, 2005; four others occurred on January 4, 2011; and one occurred on January 5, 2011. (<u>See</u> Compl., Ex. A at 2 [Doc. No. 1-1].) Karasov's DPPA claims based on the October 26, 2005 lookups are barred by the statute of limitations because they precede the May 13, 2010 cut-off date. Therefore, Plaintiff's DPPA claims against the City of Dayton are limited to the four lookups from January 4, 2011, and one lookup from January 5, 2011.

Karasov alleges that an officer from the Eden Prairie Police Department impermissibly obtained her private data once. (Compl. ¶ 67 [Doc. No. 1].) The DPS audit excerpt demonstrates that the sole lookup occurred on January 8, 2003. (<u>See</u> Compl., Ex. A at 3 [Doc. No. 1-1].) This lookup clearly predates the May 13, 2010 cut-off date. Therefore, Plaintiff's DPPA claim against the City of Eden Prairie is dismissed.

Plaintiff claims that officers from the City of Golden Valley Police Department violated the DPPA by accessing her private data three times. (Compl. ¶ 75 [Doc. No. 1].) According to the DPS audit excerpt, these three accesses occurred on January 1, 2003; August 8, 2003; and March 22, 2007. (<u>See</u> Compl., Ex. A at 4 [Doc. No. 1-1].) Because all

three obtainments predate May 13, 2010, the Court dismisses all of Plaintiff's DPPA claims against the City of Golden Valley.

Plaintiff claims that an official from the City of Hopkins improperly accessed her private data once.  (Compl. ¶ 95 [Doc. No. 1].)  The DPS audit excerpt indicates that an officer from the Hopkins Police Department looked up Karasov's data on June 15, 2005.  (See Compl., Ex. A at 8 [Doc. No. 1-1].)  This access precedes the cut-off date for the statute of limitations.  Therefore, Plaintiff's DPPA claim against the City of Hopkins is dismissed.

Karasov claims that officers from the City of Maple Grove violated the DPPA by accessing her data twice.  (Compl. ¶ 99 [Doc. No. 1].)  Plaintiff's DPS audit report demonstrates that an officer, or officers, from the Maple Grove Police Department accessed her information twice on July 12, 2009.  (See Compl., Ex. A at 8 [Doc. No. 1-1].)  Because both obtainments occurred before May 13, 2010, the Court dismisses Plaintiff's DPPA claims against the City of Maple Grove in their entirety.

Plaintiff alleges that an official from the City of Monticello impermissibly obtained her private information once.  (Compl. ¶ 115 [Doc. No. 1].)  The DPS audit excerpt shows that an official from the Monticello Deputy Registrar looked up Karasov's information on October 24, 2006.  (See Compl., Ex. A at 12 [Doc. No. 1-1].)  This lookup occurred before May 13, 2010.  Accordingly, Karasov's DPPA claim against the City of Monticello is dismissed.

Karasov claims that officers from the City of Plymouth violated the DPPA by looking up her private data six times.  (Compl. ¶ 123 [Doc. No. 1].)  The DPS audit excerpt

indicates that all six of these lookups occurred throughout 2004 and 2005.  (See Compl., Ex. A at 12 [Doc. No. 1-1].)  Therefore, Plaintiff's DPPA claims against the City of Plymouth are dismissed in their entirety.

Plaintiff also claims that officials from the City of Prior Lake impermissibly accessed her data four times.  (Compl. ¶ 127 [Doc. No. 1].)  According to the DPS audit excerpt, an officer, or officers, from the Prior Lake Police Department obtained Karasov's data once on August 31, 2008, and three times on September 16, 2009.  (See Compl., Ex. A at 12 [Doc. No. 1-1].)  All of these accesses precede the May 13, 2010 cut-off date.  Accordingly, all of Plaintiff's DPPA claims against the City of Prior Lake are dismissed.

Karasov alleges that an official from the City of Richfield violated the DPPA by obtaining her data once.  (Compl. ¶ 139 [Doc. No. 1].)  The DPS audit excerpt shows that a police officer from the Richfield Police Department looked up Karasov's data on December 14, 2005.  (See Compl., Ex. A at 13 [Doc. No. 1-1].)  As this access occurred before May 13, 2010, Plaintiff's DPPA claim based on this lookup is dismissed.

Plaintiff claims that an official from the City of Roseville impermissibly looked up her private data once.  (Compl. ¶ 143 [Doc. No. 1].)  The DPS audit excerpt demonstrates than an officer from the Roseville Police Department obtained Plaintiff's data on October 13, 2010.  (See Compl., Ex. A at 13 [Doc. No. 1-1].)  This single access occurred after the statute of limitations cut-off date.  Therefore, Plaintiff's DPPA claim based on this sole access is not barred.

Karasov alleges that an official from the City of St. Louis Park violated the DPPA by obtaining her private data once.  (Compl. ¶ 147 [Doc. No. 1].)[10]  This lookup occurred on March 5, 2004, according to the DPS audit excerpt.  (See Compl., Ex. A at 13 [Doc. No. 1-1].)  The date of this lookup precedes the statute of limitations cut-off date.  Accordingly, Karasov's DPPA claim against the City of St. Louis Park is dismissed.

Plaintiff also claims that officials from the City of Wayzata impermissibly accessed her private data twice.  (Compl. ¶ 167 [Doc. No. 1].)  The DPS audit excerpt demonstrates that both of these lookups occurred on September 9, 2010, at precisely the same time.  (See Compl., Ex. A at 14 [Doc. No. 1-1].)  Because both lookups occurred after the May 13, 2010 cut-off date, Plaintiff's DPPA claims against the City of Wayzata remain actionable.

Finally, Plaintiff names the Lake Area Police Department as a Defendant to its DPPA claim.  Other than listing the Lakes Area Police Department as a Defendant in the caption and stating that the entity "is created under Minn. Stat. § 471.59 et seq., which can be sued under Minn. Stat. § 466.01, et seq.," Karasov does not discuss this Defendant within her Complaint.  (See Compl. ¶ 12 [Doc. No. 1].)  Rather, Plaintiff merely includes an entry for this Defendant in the DPS audit excerpt.  According to the excerpt, a Lakes Area Police Department officer accessed Plaintiff's private data once on September 17, 2010.  (See Compl., Ex. A at 8 [Doc. No. 1-1].)  Reading the facts alleged throughout the Complaint in favor of Plaintiff, the Court finds that this reference to the Lakes Area Police Department is sufficient to state a claim against this Defendant.  Because this lookup occurred after the

---

[10]     As explained earlier in note 1, the Court assumes that Plaintiff intended to allege in paragraph 147 of her Complaint that the City of St. Louis Park impermissibly accessed her data once, as opposed to the City of St. Paul.

May 13, 2010 cut-off date, the Court finds that Plaintiff's DPPA claim against the Lakes Area Police Department is not barred.

In sum, all of Plaintiff's DPPA claims against the City of Bloomington, the City of Brooklyn Center, the City of Brooklyn Park, the City of Eden Prairie, the City of Golden Valley, the City of Hopkins, the City of Maple Grove, the City of Monticello, the City of Plymouth, the City of Prior Lake, the City of Richfield, and the City of St. Louis Park are dismissed. Karasov's DPPA claim(s) against: (1) the City of Burnsville is limited to one access; (2) the City of Dayton are limited to five accesses; (3) the City of Roseville is limited to one access; (4) the City of Wayzata are limited to two accesses; and (5) the Lakes Area Police Department is limited to one access.

### b. Plausibility

For the DPPA claims against Defendants City of Burnsville, City of Dayton, City of Roseville, City of Wayzata, and Lakes Area Police Department that are not barred by the statute of limitations, the Court finds that Karasov plausibly stated her DPPA claims. Defendants contend that Plaintiff failed to state a DPPA claim pursuant to Iqbal and Twombly. (See Defs. City of Bloomington, et al.'s Mem. at 5 [Doc. No. 60].) Specifically, Defendants argue that Karasov failed to plead what each Defendant's impermissible purpose was for looking up her private data; and thus, the facts do not plausibly support the inference that Defendants accessed her information for an impermissible purpose. (Id.) Moreover, Defendants argue that Karasov's sole factual allegation is that she was the subject of a widely publicized disciplinary hearing (id. at 7);

and Karasov failed to allege any facts connecting herself to any officials employed by the Entity Defendants (id.).

First, Defendants argue that Plaintiff must allege precisely what impermissible purpose Defendants had when accessing her data.  (See id.)  The Court disagrees.  As the Court explained earlier, Plaintiff need only plausibly allege that for whatever purpose Defendants obtained or used her information, it was not a permitted purpose under the statute.  See 28 U.S.C. §2721(b).  Since Plaintiff alleges in her Complaint that Defendants' activity was not justified by any of these permissible purposes (Compl. ¶¶ 4, 176, 177 [Doc. No. 1]), she has pled all of the essential elements of her DPPA claims. Karasov is not impermissibly shifting the burden to Defendants to detail a proper purpose for the access of the data.  (See Defs. City of Bloomington, et al.'s Mem. at 7 [Doc. No. 60].)  Rather, she merely alleges that Defendants did not access her data for any of the statutorily permissible purposes outlined in the DPPA; and as a result, Defendants' purpose was necessarily not permitted under the DPPA.

Next, Defendants claim that the facts Karasov pled do not reasonably support the inference that they accessed her information for an impermissible purpose.  (See id. at 7.) Defendants contend that Karasov's sole allegation is that she was the subject of a widely publicized disciplinary hearing, and "Karasov fails to allege any facts [that] connect[] [her] to these [Defendant] Cities."  (Id.)  Again, the Court disagrees.  Here, Plaintiff does not rest her case on simply the disciplinary hearing.  Instead, she bases her case on additional factual allegations such as the fact that she served as a Hennepin County District Court judge for several years, individual Defendants accessed her information by

41

name only, and she has never been advised that she was a suspect or an interested party in

any law enforcement matter.  (See Compl. ¶¶ 3, 24–27, 177 [Doc. No. 1].)  The

additional factual allegations that are detailed throughout this order satisfy Plaintiff's

duty to "to raise a right of right to relief above the speculative level."  See Twombly, 550

U.S. at 555.

As to Defendants' contention that Plaintiff failed to plead any facts connecting the

Defendants City of Bloomington, et al. to Plaintiff, the Court disagrees.  The Court makes a

reasonable inference based on the facts included in Plaintiff's Complaint that as a judge,

Karasov likely interacted with law enforcement officers from the various Defendant

Entities.  Compare Mallak, 9 F. Supp. 3d at 1058 (holding that a well-known local attorney

plausibly stated a DPPA claim because of likely connections with law enforcement officers

as a result of the attorney's line of work); and Heglund v. Aitkin County, et al., No. 14-cv-

296 (ADM/LIB), 2014 WL 4414821, at *5–6 (D. Minn. July 22, 2014) (finding a

plausible DPPA claim where plaintiff was a law enforcement officer in the county with

the most look-ups, she had been harassed by her ex-husband – who was also a law

enforcement officer with access to the database – and her current husband's record was

simultaneously accessed); with Kendall v. Anoka County, et al., No. 14-cv-247

(DSD/SER), 2014 WL 3955265, at *4 (D. Minn. Aug. 13, 2014) (holding that local

newscaster did not state plausible DPPA claim because she did nothing to connect her

celebrity status to the conduct at issue); and Ray v. Anoka County, et al., No. 14-cv-539

(PAM/TNL), 2014 WL 2511087, at *5 (D. Minn. June 4, 2014) (dismissing DPPA claims

because the allegations provided "no basis to infer that any officers in the remaining

jurisdictions have any personal connection to or interest in [the plaintiff]").  Moreover, the audit report that DPS provided to Plaintiff did not indicate the names of the officers or officials who accessed her private data.  (Compl. ¶ 40 [Doc. No. 1].)  Therefore, Plaintiff has no means of alleging specific facts against specific officers.  Nonetheless, even without allegations against specific officers, Karasov sufficiently alleges a plausible DPPA claim against Defendants.

### 6.  Defendants Freeborn County, et al.

On August 4, 2014, Defendants Freeborn County, Mille Lacs County, Rice County, Stearns County, Steele County, and Washington County [hereinafter "Defendants Freeborn County, et al."] filed a Motion to Dismiss and/or to Sever [Doc. No. 63].  Defendants' brief primarily states two arguments: (1) Plaintiff's claims are barred by the statute of limitations; and (2) Plaintiff fails to state a plausible DPPA claim.  (See Defs. Freeborn County, et al.'s Mem. at 2 [Doc. No. 66].)  However, Defendants also adopt their co-Defendants' arguments.  (See id. at 6 n.2.)  Therefore, the Court proceeds by addressing the statute of limitations defense, the plausibility of Karasov's DPPA claim, and the qualified immunity defense.

### a.  Statute of Limitations

Consistent with the Court's finding above, the Court applies the standard rule for accrual to Plaintiff's DPPA claims against Defendants Freeborn County, et al.  Therefore, Plaintiff's DPPA claims that are based on allegations of improper conduct occurring prior to May 31, 2010 are barred.

Although Karasov does not discuss Defendant Freeborn County extensively in her Complaint, the DPS audit excerpt includes an entry for Freeborn County.  According to the excerpt, an official from Freeborn County Court Services allegedly violated the DPPA by accessing her data once on January 6, 2011.  (See Compl., Ex. A at 4 [Doc. No. 1-1].)  This single lookup occurred after the May 13, 2010 cut-off date.  Therefore, Plaintiff's DPPA claim against Freeborn County is not barred by the statute of limitations.

Karasov alleges that an official from Mille Lacs County impermissibly accessed her data once.  (Compl. ¶ 103 [Doc. No. 1].)  The DPS audit excerpt shows that an official from the Mille Lacs County Attorney's Office obtained Karasov's private data on November 19, 2007.  (See Compl., Ex. A at 8 [Doc. No. 1-1].)  The date of this access precedes the statute of limitations cut-off date.  Accordingly, Plaintiff's DPPA claim against Mille Lacs County is dismissed.

Plaintiff claims that an official from Rice County also obtained her private data once.  (Compl. ¶ 135 [Doc. No. 1].)  The DPS audit excerpt includes an entry for an officer from the Rice County Sheriff's Office who accessed Karasov's data on October 16, 2007.  (See Compl., Ex. A at 13 [Doc. No. 1-1].)  As this obtainment occurred prior to May 13, 2010, the Court dismisses Plaintiff's DPPA claim against Rice County.

Karasov alleges that officials from Stearns County impermissibly obtained her private data twice.  (Compl. ¶ 155 [Doc. No. 1].)  According to the DPS audit excerpt, both accesses occurred at precisely the same time on January 4, 2011.  (See Compl., Ex. A at 13 [Doc. No. 1-1].)  These simultaneous obtainments occurred after the statute of

limitations cut-off date.  Accordingly, Plaintiff's DPPA claims against Stearns County are not time barred.

Plaintiff also claims that officials from Steele County violated the DPPA by obtaining her private information four times.  (Compl. ¶ 159 [Doc. No. 1].)  The four accesses all occurred on January 6, 2011, according to the DPS audit excerpt Plaintiff included.  (See Compl., Ex. A at 13 [Doc. No. 1-1].)  Since all four lookups occurred after May 13, 2010, Plaintiff's DPPA claims against Steele County are not time barred.

Finally, Karasov alleges that an official from Washington County improperly accessed her private data once.  (Compl. ¶ 163 [Doc. No. 1].)  The DPS audit excerpt shows that an officer from the Washington County Sheriff's Office accessed Karasov's data on October 24, 2006.  (See Compl., Ex. A at 13 [Doc. No. 1-1].)  Because the date of this access precedes the May 13, 2010 cut-off date, Plaintiff's DPPA claim against Washington County is barred by the statute of limitations.

In sum, all of Plaintiff's DPPA claims against Mille Lacs County, Rice County, and Washington County are dismissed.  Karasov's DPPA claim(s) against: (1) Freeborn County is based on one access; (2) Stearns County are based on two accesses; and (3) Steele County are based on four accesses.

### b.  Plausibility

For the DPPA claims against Defendants Freeborn County, Stearns County, and Steele County, which are not barred by the statute of limitations, the Court finds that Karasov's claims are plausible.  Defendants contend that Plaintiff fails to state a DPPA

claim because she only alleges conclusory opinions and not specific facts. (See Defs. Freeborn County, et al.'s Mem. at 7 [Doc. No. 66].)

First, Defendants particularly take issue with the fact that Karasov does not make specific allegations against Freeborn County within her Complaint, other than alleging "that Freeborn County's alleged access occurred on the same day as Plaintiff's DVS data was accessed by others." (Id. at 9.) The Court agrees with Defendants that Plaintiff does not explicitly state that she "has never been charged with or suspected of committing a crime in Freeborn County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Freeborn County." Nonetheless, Karasov states that she "was not involved in any criminal activity[,] nor suspected of any such activity," and she has not "committed any act that would entitle Entity Defendants and individual Defendants to obtain her information under any of the permissible [statutory] exceptions [under the DPPA]." (Compl. ¶ 177 [Doc. No. 1].) Therefore, reading Plaintiff's Complaint as a whole, the Court finds that Plaintiff sufficiently alleges enough facts to plead a plausible DPPA claim against Freeborn County.

Additionally, Defendants argue that the facts Karasov alleges against Freeborn County, et al. are conclusory and speculative. (See Defs. Freeborn County, et al.'s Mem. at 12 [Doc. No. 66].) For instance, Defendants claim that Karasov merely speculates that the accesses made by Defendants in 2011 were related to her judicial misconduct investigation. (Id.) The Court disagrees. The Court finds that the fact that Karasov was the subject of a highly publicized judicial misconduct hearing, and her line of work likely made her well-known to law enforcement officials throughout the state, makes her DPPA

46

claim plausible, as opposed to only speculative.  The "outwardly discernible facts" she allege, see Mitchell, 2014 WL 835129, at *9, "raise a reasonable expectation that discovery will reveal evidence of [her DPPA claims]."  Twombly, 550 U.S. at 556.  As explained above, at this stage of the proceedings, Karasov cannot allege more specific allegations against each County Defendant or individual Defendant because the DPS audit report provided to her did not indicate the names of the officials who accessed her data.  (See Compl. ¶ 40 [Doc. No. 1].)  Therefore, the Court does not expect Plaintiff to allege "any specific wrongdoing by any employee of the County Defendants."  (Cf. Defs. Freeborn County, et al.'s Mem. at 12 [Doc. No. 66].)

Finally, Defendants Freeborn County, et al. argue that "Plaintiff's attempt to show a 'pattern' of accesses wholly disregards" the requirement that the Court must address each DPPA claim individually and separately pursuant to Iqbal, as articulated by the Mitchell Court.  (See id.)  Defendants misapply the law to the facts of this case.  Although Karasov must "allege facts reflecting the impropriety of the data retrieval by each [Defendant] to raise her claim against [the Defendant] above the speculative level," Mitchell, 2014 WL 835129, at *6, the "troubling pattern" in the DPS audit excerpt only bolsters her claim (see Compl. ¶ 180 [Doc. No. 1]).  Karasov does not solely allege that because government officials throughout the country generally misuse their access to the DVS database, then Defendants in this case necessarily misused their access as well.  If this was Plaintiff's sole basis for her claim, then Karasov's reliance on the national "pattern" of impermissible accesses would be in disregard of her duty under Iqbal to plead her claim with specificity.  Rather, Karasov contends that her DPPA claim is further substantiated

by the fact that individual Defendants from different government organizations acted in

concert to obtain her data during her judicial misconduct investigation.  (Id. ¶ 273.)

Accordingly, Plaintiff has sufficiently alleged facts substantiating her DPPA claim against

Defendants Freeborn County, et al.

### c.  Qualified Immunity

Freeborn County, et al. also argue that Plaintiff's Complaint should be dismissed

because its officials are entitled to qualified immunity for Plaintiff's DPPA claims.  (See

Defs. Freeborn County, et al.'s Mem. at 6 n.2 [Doc. No. 66].)  The Court finds that

Freeborn County, et al. and its officials and supervisors are not entitled to qualified

immunity for the same reasons that the other Defendants are not entitled to this defense.

### 7.  Defendant Ramsey County

On August 4, 2014, Defendant Ramsey County also filed a Motion to Dismiss or

for Severance [Doc. No. 67].  Defendant argues that dismissal was proper because: (1)

Plaintiff's claims are barred by the statute of limitations; (2) Plaintiff fails to state a

plausible DPPA claim; and (3) Ramsey County is entitled to qualified immunity.  (See

Def. Ramsey County's Mem. at 1 [Doc. No. 70].)  The Court discusses the merits of each

of these arguments below.

### a.  Statute of Limitations

Karasov alleges that Ramsey County violated the DPPA by impermissibly accessing

her private data six times.  (Compl. ¶ 131 [Doc. No. 1].)  Plaintiff's DPPA audit excerpt

substantiates this claim by showing five accesses that occurred throughout 2003, 2004, and

2006, and one access that occurred on January 5, 2011.  (See Compl., Ex. A at 13 [Doc. No.

1-1].)  Utilizing the May 13, 2010 cut-off date, the Court finds that the four lookups that

occurred prior to this date are barred by the statute of limitations.  Accordingly, only one of

Plaintiff's DPPA claims against Ramsey County is not barred.

### b.  Plausibility

The Court proceeds by addressing the plausibility of Plaintiff's DPPA claim based

on the sole January 5, 2011 lookup by an official at the Ramsey County Sheriff's Office.

Ramsey County contends that Plaintiff's DPPA claim is implausible for two reasons.  The

first reason is because Karasov "alleges no facts that plausibly establish that Ramsey

County Defendants accessed her records for an impermissible purpose."  (See Def. Ramsey

County's Mem. at 5 [Doc. No. 70].)  The second reason is because Ramsey County

contends that merely accessing or viewing data is insufficient to state a DPPA claim.  (See

id. at 10.)  As to whether Karasov alleged facts to substantiate her DPPA claim, the Court

finds that Plaintiff does more than simply "rel[y] on personal characteristics about herself."

(Cf. id. at 9.)  Rather, Plaintiff alleges a series of facts, which taken as a whole, demonstrate

that Ramsey County plausibly accessed Plaintiff's data for a purpose not permitted under

the DPPA.  (See Compl. ¶¶ 24–27, 131–34 [Doc. No. 1].)

As to Defendant's argument about the distinction between "viewing" and

"obtaining" an individual's data under the DPPA, the Court disagrees with Defendant's

interpretation of the statute.  According to the DPPA, a plaintiff has a cause of action

against any person who knowingly obtains the plaintiff's personal information from his

or her motor vehicle record, for a purpose not permitted under the DPPA.  See 18 U.S.C.

§ 2724(a).  Courts in this District have resoundingly held that every time an official views

a plaintiff's private data, the official is liable for "obtaining" this private data.  See

Rollins, 2014 WL 7534658, at *32; Kampschroer, 2014 WL 4988405, at *9; Mallak, 9 F.

Supp. 3d at 1055–56; Nelson, 2013 WL 5888235, at *2.  Applying this standard to the

facts of this case, every time an individual Defendant allegedly "viewed" or "accessed"

Plaintiff's private data, that Defendant "obtained" her data, and the obtainment serves as

a basis for Plaintiff's DPPA claims.  Thus, Plaintiff's DPPA claim is sufficiently

plausible to survive Ramsey County's Motion to Dismiss.

### c.  Qualified Immunity

Ramsey County also contends that Plaintiff's Complaint should be dismissed

because its officials are entitled to qualified immunity for Plaintiff's DPPA claims.  (See

Def. Ramsey County's Mem. at 15–18 [Doc. No. 70].)  The Court finds that Ramsey

County and its officials and supervisors are not entitled to qualified immunity for the

same reasons that the other Defendants are not entitled to this defense.

### 8.  Defendant City of Edina

On September 2, 2014, Defendant City of Edina filed a Motion for Judgment on the

Pleadings and/or to Sever [Doc. No. 83].  Edina adopted and incorporated all of the

arguments made by its co-Defendants in their briefing.  (See City of Edina's Mem. at 2

[Doc. No. 85].)  Therefore, the Court addresses (1) the statute of limitations defense; (2) the

plausibility of Plaintiff's claims; and (3) the qualified immunity defense.

### a.  Statute of Limitations

Karasov alleges that officials from the City of Edina accessed her data eight times,

for a purpose not permitted under the DPPA.  (Compl. ¶ 71 [Doc. No. 1].)  According to the

DPS audit excerpt attached to her Complaint, four of these obtainments occurred in 2006 and 2008.  (See Compl., Ex. A at 3–4 [Doc. No. 1-1].)  Additionally, officers from the Edina Police Department looked up Karasov's data twice on May 13, 2010,[11] once on April 19, 2011, and once on April 22, 2011.  (See id. at 4.)  Plaintiff's DPPA claims that are based on allegations of improper conduct occurring *prior* to May 13, 2010 are barred.  Accordingly, Plaintiff's DPPA claims that are based on the two accesses in 2010 and the two accesses in 2011 are not barred by the statute of limitations.

### b.  Plausibility

The City of Edina asserts that Plaintiff's DPPA claims are implausible because each lookup made by Edina in 2010 and 2011 was "related to investigations or other legitimate law enforcement functions."  (See Def. City of Edina's Mem. at 1 n.1 [Doc. No. 85].)  However, Defendant does not substantiate this defense further.  Although Edina contends that officials had permissible purposes under the DPPA to access Karasov's data, at this stage in the proceeding, the Court must take Plaintiff's factual allegations as true.  Here, Karasov alleges that Edina officials did *not* have a permissible purpose for obtaining her information because she "has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Edina, and there was no legitimate reason for

---

[11]   Edina also argues that numerous entries in Exhibit A only constitute one access or obtainment.  (See Def. City of Edina's Mem. at 1 [Doc. No. 85].)  Although Edina does not extrapolate its argument further, the Court assumes that Defendant intended to refer to the two simultaneous accesses made by official(s) on May 13, 2010.  (See Compl., Ex. A at 4 [Doc. No. 1-1].)  As the Court explained earlier, every time an official views a plaintiff's private data, the official is liable for "obtaining" this private data.  Accordingly, every impermissible access of Plaintiff's private data, regardless of how close in time each access was, serves as a basis for Plaintiff's DPPA claims.

Plaintiff to have been the subject of any investigation by the City of Edina." (Compl. ¶ 73 [Doc. No. 1].) Plaintiff couples this allegation with claims that she was the subject of a highly publicized judicial misconduct investigation, and Edina officials looked up her information by name. (See id. ¶ 3, 24–27.) Accordingly, the Court finds that Plaintiff states plausible DPPA claims against the City of Edina.

### c. Qualified Immunity

Insofar as Defendant City of Edina adopts the defense of qualified immunity that other Entity Defendants have raised (See Def. City of Edina's Mem. at 2 [Doc. No. 85]), the Court finds that the City of Edina and its officials and supervisors are not entitled to qualified immunity for the same reasons that the other Defendants are not entitled to the defense.

### 9. Defendant Commissioners Dohman and Campion

Finally, Defendant Commissioners filed a Motion to Dismiss Plaintiff's Complaint on August 11, 2014 [Doc. No. 73]. Defendant Commissioners filed a brief memorandum [Doc. No. 74], to which Plaintiff never responded. Defendants argue that the Court should "adopt and apply its reasoning in the Kampschroer matter and dismiss with prejudice all claims brought against the Commissioners in this suit." (See Def. Commissioners' Mem. at 2 [Doc. No. 74].) Karasov's allegations against Commissioners Dohman and Campion are substantially similar to the allegations made by the plaintiffs in Kampschroer, Rollins, and Kennedy. See Kennedy, 2014 WL 7073322, at *23–24; Rollins, 2014 WL 7534658, at *34; Kampschroer, 2014 WL 5530590, at *8. Therefore, the Court rules in accordance with its finding in those cases and dismisses Karasov's DPPA claims against Defendant

Commissioners.  See id.  Accordingly, the Court grants Commissioners' Motion to Dismiss in its entirety.

### C. Severance

Finally, various Defendants move for severance under Rule 20 of the Federal Rules of Civil Procedure.  (See Def. Hennepin County's Mem. at 17–18 [Doc. No. 29]; Def. City of St. Paul's Mem. at 8–9 [Doc. No. 34]; Def. City of Minneapolis' Mem. at 30–31 [Doc. No. 40];  Def. Metropolitan Council's Mem. at 1 [Doc. No. 49]; Defs. City of Bloomington, et al.'s Mem. at 10–11 [Doc. No. 60]; Defs. Freeborn County, et al.'s Mem. at 13–14 [Doc. No. 66]; Def. Ramsey County's Mem. at 18–20 [Doc. No. 70]; Def. City of Edina's Mem. at 2 [Doc. No. 85].)  Because the Court has dismissed all of the claims relating to the City of Bloomington, the City of Brooklyn Center, the City of Brooklyn Park, the City of Eden Prairie, the City of Golden Valley, the City of Hopkins, the City of Maple Grove, the City of Monticello, the City of Plymouth, the City of Prior Lake, the City of Richfield, the City of St. Louis Park, the Metropolitan Council, Mille Lacs County, Rice County, and Washington County, those Defendants' requests for severance are moot.

The remaining Defendants argue that Plaintiff failed to allege any joint action among Defendants, or any connection among the alleged lookups of her driver's license information.  (See id.)  Plaintiff contends that she has met the requirements of Rule 20, and judicial economy supports joinder of the Defendants.  Specifically, Karasov states that "[t]here are an abundance of allegations that [Defendants are] part of a system

designed to allow and encourage the violation of the DPPA." (Pl.'s Resp. to Def.

Hennepin County at 25 [Doc. No. 42].)

Rule 20 permits joinder of defendants if: (1) "any right to relief is asserted against

them jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions or occurrences;" and (2) "any question

of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

A court assesses whether claims are reasonably related on a case-by-case basis. Mosley

v. General Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974). Applying this standard of

review, the Kampschroer Court held that the plaintiff's claims against the entity and

individual defendants should not be severed because both prongs of Fed. R. Civ. P. 20(a)

were met. Kampschroer, 2014 WL 4988405, at *15. First, the plaintiffs' DPPA claims

raised common questions of law and fact. Id. Second, the facts alleged demonstrated a

"concerning pattern in which various Defendants accessed [one of the plaintiff's]

information in close proximity to each other;" and thus, the facts suggested "that the

Defendants acted jointly or otherwise cooperated to access [this plaintiff's] information

for an impermissible purpose." Id.

Here, the facts alleged also satisfy both prongs of Rule 20(a)(2); and thus, the

Court permits joinder of the remaining Defendants. First, Plaintiff's DPPA claims raise

questions of law and fact common to all Defendants. See Fed. R. Civ. P. 20(a)(2)(B).

Specifically, Karasov alleges that each Defendant knowingly accessed her private data

for a purpose not permitted by the DPPA. (Compl. ¶ 342 [Doc. No. 1].) She also alleges

that poor implementation and monitoring of the driver's license database systems allowed

Defendants to violate the DPPA by improperly accessing her information.  (Id. ¶¶ 188–231.)

Second, reading the Complaint as a whole, Plaintiff sufficiently alleges that her right to relief arises out of the same series of transactions.  See Fed. R. Civ. P. 20(a)(2)(A).  Asserting that Defendants are appropriately joined under Rule 20, Karasov argues that her case is similar to United States v. Mississippi, where the Supreme Court held that joinder of all the defendants was appropriate because the government alleged in its complaint that the defendants "had acted and were continuing to act as part of a state-wide system."  380 U.S. 128, 142 (1965).  Here, Plaintiff alleges that the DPS audit demonstrates a "troubling pattern."  (Compl. ¶ 180 [Doc. No. 1].)  Specifically, she claims that because some of the accesses by officials employed by different government entities were made at, or around, the same time, this "indicat[es] some sort of discussion or other concert of activity about her between different agencies."  (Id. ¶ 273.)  Construing all reasonable inferences in the light most favorable to Plaintiff, the Court reads Plaintiff's Complaint as suggesting that Defendants acted jointly or otherwise cooperated to access Karasov's information for an impermissible purpose.  Morton, 793 F.2d at 187; see Kampschroer, 2014 WL4988405, at *15 (holding that because the DVS audit demonstrated that individuals from different defendant entities accessed the plaintiff's data in close proximity to one another, sufficient facts existed suggesting that the defendants acted jointly or cooperated with one another).  Thus, Plaintiff satisfies the requirements of Rule 20(a)(2), and, at this point, the Court denies Defendants' motions to sever.

IV.    **ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT:**

1. Defendant Hennepin County's Motion to Dismiss and/or to Sever [Doc. No. 27] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

2. Defendant City of St. Paul's Motion to Dismiss or to Sever [Doc. No. 32] is **DENIED**.

3. Defendant City of Minneapolis' Motion to Dismiss or For Severance [Doc. No. 37] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

4. Defendant Metropolitan Council's Motion to Dismiss or to Sever [Doc. No. 46] is **GRANTED**.

5. Defendants City of Bloomington, et al.'s Motion to Dismiss and/or to Sever [Doc. No. 57] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

6. Defendants Freeborn County, et al.'s Motion to Dismiss and/or to Sever [Doc. No. 63] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

7. Defendant Ramsey County's Motion to Dismiss or for Severance [Doc. No. 67] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

8. Defendant City of Edina's Motion for Judgment on the Pleadings and/or to Sever [Doc. No. 83] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

9. Defendant Commissioners' Motion to Dismiss [Doc. No. 73] is **GRANTED**.

10. Plaintiff must serve Otter Tail County with a summons and the Complaint, no later than ten days after the date of this Order.  If Plaintiff fails to do so, the Court will dismiss this action against Otter Tail County without prejudice.

Dated: February 3, 2015                    s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Court Judge